IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| The Inclusive Communities Project, Inc., | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No.  3:18-cv-02570 |
| | * | |
| City of Wylie, Texas | * | |
| | * | |
| Defendant. | * | |
| | * | |

## Complaint

### Introduction

1. The City of Wylie refuses to use available federal funding for low income rental housing for those in need. Instead the City of Wylie uses, without stating reasons, a local municipal veto to exclude Low Income Housing Tax Credit (LIHTC) housing that would be developed by private developers for low income rental families while supporting proposals that would be restricted to elderly only residents.[1] The City's actions make housing unavailable because of race. ICP seeks to limit the unreasoned use of the veto and to require the City's use of other available programs for low income rental housing assistance.

2. The City of Wylie has grown from 5,029 occupied housing units in 2000 to 14,007 occupied housing units in 2016. It is the largest city in the Wylie ISD and the only City in WISD

---

[1] While elderly tenants are eligible for occupancy in family or "General" LIHTC projects, non-elderly tenants including families with children are not eligible for occupancy in elderly projects restricted to tenants 62 years of age or older. This complaint refers to these elderly projects as "elderly restricted" and the General or family projects as "non-elderly restricted, family" projects. The distinction arises out of a Fair Housing Act exemption for this form of elderly housing from the prohibition against familial status discrimination. 42 U.S.C. §§ 3607(b)(1), (2).

with multifamily zoning. The number of single family units in Wylie increased from 3,454 in 2000 to 11,496 in 2016. The number of multifamily units in Wylie increased from 416 units in 2000 to 1,106 in 2016. Wylie has tripled in population since 2000. The 2000 population was 15,132, the 2106 population is 45,655 according to U.S. Census data.

3. Wylie ISD has grown from 10,690 students in 2008 to 15,033 students in 2017 - 2018.

4. The State of Texas approved a 120 unit privately owned LIHTC project in the City in 2000. The City provided no financial assistance for these units. This 120 unit, non-elderly restricted, family project is the only low income affordable multifamily rental complex in the City of Wylie and in the entire Wylie ISD. These 120 units were 2.39% of the number of occupied housing units in the City in 2000. These 120 units were 0.86% of all housing units in the City of Wylie in 2016.

5. There are 64 federal housing rental vouchers in the City of Wylie. These vouchers are located in either the one LIHTC project or in single family homes in Wylie. None of the 10 privately owned apartment complexes in Wylie will rent to voucher participants.

6. There are 375 Wylie families in need of low income affordable rental housing assistance based on the family income according to U.S. Department of Housing and Urban Development data. The need is measured by the number of renter families with incomes less than 80% of Area Median Family Income and with housing costs in excess of 30% of their income.

7. Defendant City of Wylie, Texas has obstructed the development of non-elderly restricted, family affordable LIHTC apartment complexes in the City. Since 2005, Wylie has refused to provide a resolution of municipal support for nine non-elderly restricted, family proposals for LIHTC development in Wylie. The refusal to provide the resolutions of support

eliminated the likelihood that these non-elderly restricted, family proposals would receive tax credits and provide affordable rental housing to the Wylie families in need. The City of Wylie provided resolutions of municipal support for six elderly restricted LIHTC proposals for LIHTC in Wylie.

8. LIHTC housing is an important source of housing for federal Housing Choice Voucher (voucher) families since LIHTC projects cannot deny voucher tenants housing because they have a voucher. The vast majority of the LIHTC housing is located in the City of Dallas in minority concentrated areas with unequal and unsafe neighborhood conditions.

9. The Inclusive Communities Project's (ICP) voucher clients seek ICP's assistance to find and obtain dwelling units in safe and secure communities with higher median incomes, good schools, low poverty rates, and adequate public and private services and facilities (high opportunity areas). Wylie is a majority White non Hispanic city. Wylie's refusal to allow LIHTC housing in Wylie makes non-elderly restricted, family housing unavailable to voucher families, a disproportionately Black or African American population.

10. Wylie is also making LIHTC housing unavailable for families with children. ICP's voucher clients are predominantly families with children under the age of eighteen. The only LIHTC applications not vetoed by the City of Wylie have been those restricted to only elderly residents and that exclude all non-elderly residents.[2] The low income renter families in Wylie that need of low income affordable housing assistance are disproportionately non-elderly.

---

[2] The classification for non-elderly restricted LIHTC units used by the State LIHTC agency, TDHCA, has changed over time. The current classification is "General" since elderly households and non-elderly households may reside in such projects. The elderly LIHTC units that are restricted solely to elderly households are "Elderly".

11. There are a variety of municipal actions that can be taken to provide low income affordable rental housing in addition to supporting the approval of LIHTC non-elderly restricted family projects. These actions include:

• voluntary inclusionary zoning for private developers willing to provide a portion of the available units at affordable rents or rent to voucher families;

• use of federal funds to provide incentives such as bonuses and sublease arrangements to existing or future private landlords for renting to voucher families meeting the landlords' tenant selection criteria;

• implement the municipal actions set up by state law for the purpose of providing publicly assisted low income rental housing including public housing and voucher programs pursuant to municipal, county, or regional housing authorities;

• implement a municipal housing finance corporation to provide financing for affordable housing.

12. The City of Wylie refuses to take any of these actions for the benefit of its low income tenant families.

**Jurisdiction**

13. The Court has jurisdiction pursuant to 42 U.S.C. § 3613(a)(1)(A) and 28 U.S.C. § 1331.

**Plaintiff**

14. Plaintiff The Inclusive Communities Project, Inc. (ICP) is a fair housing focused non-profit organization working with households seeking access to housing in predominately non-minority locations in the Dallas area. As part of its mission, ICP provides counseling,

financial assistance, and other services to Black or African American households participating in the voucher program administered by the Dallas Housing Authority (DHA).

15. 85% of the DHA voucher participants are Black or African American according to the U.S. Department of Housing and Urban Development (HUD). ICP assists DHA voucher households who choose to lease dwelling units in non-minority areas with counseling and financial assistance. ICP also operates its sublease/guarantor program for its clients. ICP's office is located in the City of Dallas, Dallas County, Texas. ICP's clients are predominantly Black or African American. ICP's clients are predominantly families with children.

16. ICP is organized to work for the creation and maintenance of thriving racially and economically inclusive communities, expansion of fair and affordable housing opportunities for low income families, and redress for policies and practices that perpetuate the harmful effects of discrimination and segregation. ICP operates to create and obtain affordable housing in non-minority concentrated areas within the Dallas metropolitan area for persons eligible for low income housing including voucher households. This includes, among other means, providing the counseling and other forms of assistance to voucher households seeking to utilize their housing choice voucher to move into those areas.

17. ICP focuses its housing mobility counseling and financial assistance resources on helping households find housing in higher opportunity areas with lower poverty rates, higher median family income, and higher ranking public schools.

18. The City of Wylie is a high opportunity area. Wylie provides ICP's clients with affordable housing in a safe neighborhood with good schools and other amenities. ICP has assisted voucher families in moves to both the LIHTC project in Wylie and to single family

homes in Wylie. ICP has voucher families who would move to Wylie for the housing, education, and other opportunities but cannot find available units.

**Defendant**

19. Defendant City of Wylie is a home-rule municipality in Texas. It is located in Collin, Dallas, and Rockwall counties.

**Injury to ICP and ICP's clients from Wylie's actions**

20. ICP's assistance to its DHA voucher clients is part of the remedy in the *Walker v. HUD* public housing desegregation case. The U.S. Court of Appeals for the Fifth Circuit recommended a desegregation plan to remedy the intentional segregation of public housing and Section 8 vouchers by the federal government, the City of Dallas, and the Dallas Housing Authority. The plan included a housing voucher mobility program. The Fifth Circuit held that this remedy should include more vouchers and a vigorous mobility program that served the Black voucher households wishing to move out of the segregated areas. *Walker v. City of Mesquite*, 169 F.3d 973, 985, 987-988 (5th Cir. 1999), cert. denied, 528 U.S. 1131 (2000). The United States District Court adopted the housing mobility program as part of the remedy. ICP has been providing housing mobility services to its DHA voucher clients since 2005.

21. The housing mobility assistance given by ICP to DHA voucher participants begins with providing mobility counseling information to the voucher participants as they attend DHA's mandatory voucher briefings. After the briefings, ICP provides additional mobility assistance as requested by the households who want to make and sustain a move to a high opportunity area. This help includes pre-move mobility counseling and related financial assistance. The housing mobility assistance also includes negotiating with landlords as necessary to obtain units in the

eligible areas at rents that are affordable by the voucher households and eligible for the voucher subsidy. The financial assistance ICP provides to these households may include the payment of application fees and security deposits to assist households moving into housing that provides opportunities in non-predominantly minority, non-poverty concentrated areas. ICP can also make landlord incentive bonus payments to landlords in areas that provide housing opportunities in non-predominantly minority, non-poverty concentrated areas who agree to participate in DHA's voucher program. ICP makes these payments when it determines that such incentives are necessary to secure housing for the voucher households. For example, ICP may provide a reasonable bonus payment to a landlord if it is necessary to obtain a rent concession in order for a unit to be eligible for voucher assistance at a rent affordable to the family or if the bonus payment is necessary to convince a landlord to participate in DHA's voucher program.

22. LIHTC housing is an important source of housing for voucher families including ICP voucher clients. The LIHTC units are important to ICP in its provision of integrated housing opportunities for its clients. The LIHTC projects cannot refuse to rent to an applicant based on the applicant's status as a voucher holder. 26 U.S.C. § 42(h)(6)(B)(iv); Tex. Gov't Code § 2306.269(b). A large percentage of non-tax credit projects in low poverty, non-minority concentrated areas not marked by conditions of slum, blight, and distress throughout the Dallas metropolitan area do refuse to rent to voucher participants. The LIHTC projects are the only form of housing in the Dallas area that is prohibited from refusing to accept vouchers.

23. None of the private multifamily apartment complexes in the City of Wylie accept vouchers.

24. Since the LIHTC projects cannot refuse to accept housing choice vouchers and the

units usually rent for amounts less than housing choice voucher maximum rents, it is possible for ICP to help its clients obtain these units using less ICP time and at a lower ICP out of pocket cost. However, since LIHTC units are disproportionately located in minority areas marked by conditions of slum, blight, and distress and thus are not eligible for ICP's assistance, ICP must rely on the private market in the low poverty, non-minority concentrated areas. Many of the private market landlords in those areas refuse to accept vouchers. The refusals substantially reduce the supply of available units for voucher families and increase the ICP resources needed to assist its clients to obtain affordable units in these non-minority concentrated areas.

25. ICP's ability to assist its voucher clients in obtaining dwellings in high opportunity areas is obstructed by Defendant's discriminatory housing practices. For each unit made unavailable by Defendant's discrimination, ICP must use additional time and resources to find another unit for its voucher clients.

26. There is widespread refusal to rent to voucher households by multifamily landlords with units in high opportunity areas. This lack of available multifamily units in high opportunity areas increases ICP's clients' and other voucher families' need for single family units in high opportunity areas. The costs to assist clients in single family units are greater for ICP than the costs to assist clients in LIHTC units. These costs include higher security deposits and additional search time to locate a single family unit.

27. If the ICP client is unable to find either a multifamily landlord or a single family landlord in a high opportunity willing to negotiate with and rent to voucher families, the ICP client is likely to have no choice but to rent in a minority concentrated, high poverty, low income neighborhood marked by unequal neighborhood living conditions. Many of ICP's clients are

families with young children. The body of peer-reviewed scholarly research and government reports demonstrates that growing up in a racially segregated, impoverished neighborhood reduces children's well-being on a variety of indicators from childhood through their adult years. The bulk of the evidence indicates that growing up in a socioeconomically disadvantaged neighborhood with many non-white neighbors reduces children's well-being.

28. ICP meets the Fair Housing Act definition of an aggrieved person. 42 U.S.C. § 3602(i). ICP has been injured by Defendant's discriminatory housing practice and will be injured in the future by the practice.

29. ICP's mission is directly connected to the provision of racially integrated housing opportunities and the elimination of racial segregation. The creation of racially integrated housing opportunities and the elimination of racial segregation are purposes of the Fair Housing Act, 42 U.S.C. § 3601.

30. When the voucher client is unable to obtain a unit outside of the racially concentrated areas of high poverty, ICP's resources for the mobility counseling efforts on behalf of the voucher client have been expended without furthering ICP's racial integration and desegregation purposes.

31. ICP has a close, essentially representative relationship with its clients. It acts as their agent in locating integrated rental housing and negotiating housing terms. ICP acts as the clients' representative in advocacy involving individual matters with the housing authority. It also acts as the clients' representative in advocacy involving institutional issues such as the amount of the fair market rent that can be paid in the Housing Choice Voucher Program. ICP is an integral part of its clients' exercise of their housing-related protections under the civil rights laws. ICP's actions assisting its clients in obtaining racially integrated housing is within the zone of interests of the

Fair Housing Act.

32. ICP has assisted federal voucher program participants locate and rent single family homes in Wylie and at Bachon Townhomes the one LIHTC apartment complex in Wylie. ICP has many clients who wish to live in Wylie but cannot because of the lack of LIHTC units and other units willing to accept a voucher client.

33. ICP has families that have moved to Wylie that are paying more to rent there than if there was LIHTC housing or multifamily that would accept vouchers.

34. As part of ICP's mission, ICP also uses its funds and other resources to encourage the development of LIHTC housing for its clients' use in non-minority concentrated areas free from the adverse effects of slum, blight, and distress. The Inclusive Communities Housing Development Corporation (ICHDC), a wholly owned subsidiary of ICP is responsible for the implementation of this program. ICHDC works with private developers to expand the supply of affordable rental housing in areas that offer low income families access to well-resourced communities. ICHDC works with private developers, housing authorities, and municipalities to expand the availability of LIHTC housing for ICP's voucher families in non-minority concentrated, low poverty areas with high performing schools and access to employment and services. ICP has expended its resources in efforts to get LIHTC development in Wylie for ICP voucher families. Wylie continues to refuse to provide resolutions of municipal support for non-elderly restricted, family LIHTC housing.

**Facts**

35. The population of Wylie is majority White non Hispanic. According to the 2016 U.S. Census American Community Survey 5 year estimate, Wylie is 61% White non-Hispanic, 14%

Black or African American, and 18% Hispanic.

36. The majority of the occupied housing units in Wylie are single family homes, 11,496 of 14,007 total occupied units or 82%. There are only 1,106 multifamily units or 8% of all units in Wylie. The 938 mobile homes are 7% of the occupied units in Wylie.

37. The City of Wylie has grown from 5,029 occupied housing units in 2000 to 14,007 occupied housing units in 2016. It is the largest city in the Wylie ISD and the only City in WISD with multifamily zoning. The number of single family units in Wylie increased from 3,454 in 2000 to 11,496 in 2016. The number of multifamily units in Wylie increased from 416 units in 2000 to 1,106 in 2016.

38. Wylie ISD (WISD) has grown from 10,690 students in 2008 to 15,033 students in 2017 - 2018. WISD has built new schools to accommodate the increase in students. Since 2000, WISD has built 7 new elementary schools, 2 new intermediate schools, 2 new junior high schools, and two new high schools. WISD has expanded the existing schools. Wylie High School was reclassified from 5A to 6A in 2016 because of its student increase.

39. The increase in school population in Wylie ISD schools is the result of the expansive growth of single family homes throughout the City of Wylie and in Wylie's extra-territorial jurisdiction as well as in the other cities in WISD.

40. The LIHTC program is the federal government's primary program for encouraging the investment of private equity in the development of affordable rental housing for low-income households. Since its creation in 1986, the LIHTC program provided financing for more than 2.4 million affordable rental-housing units for low-income households. The U.S. Department of Treasury allocates low income housing tax credits to state agencies who in turn award tax credits

to eligible affordable housing developers. Developers use the credits to obtain funding for their projects from third-party investors to build the housing. These investors contribute equity to the projects and then claim the housing tax credits.

41. LIHTCs provide equity equal to the present value of either 70% (referred to as the 9% credit) or 30% (the 4% credit) or of the eligible costs of a low-income housing project. To qualify for the tax credit, a project must provide rent-restricted units and set aside units for low income households.

42. The Texas Department of Housing and Community Affairs (TDHCA) is the state allocating agency in Texas that administers the LIHTC program. The 9% LIHTC program is a competitive program with developers submitting applications to TDHCA and competing for an award of LIHTC.

43. In 2013, the Texas Legislature passed a law requiring the governing body of a municipality in which a proposed LIHTC development site is to be located to pass a resolution of support or of no objection in order for a LIHTC project to get enough points to be approved by the state LIHTC allocating agency.

44. Under this annual competitive process for an award of 9% LIHTC, a developer first submits a pre-application to TDHCA. If a City refuses to provide support for the application then a developer usually does not file a complete application since the lack of City support effectively prevents the project from getting an LIHTC award. Without the high number of points for a City's support, the 9% LIHTC application will not be competitive and will not receive an award of tax credits.

45. The City of Wylie's refusal to provide support or no objection resolutions for non-

elderly restricted, family LIHTC 9% applications has given Wylie a local veto over the provision

of non-elderly restricted, family LIHTC housing in Wylie. The City of Wylie has not generally

used the veto on elderly restricted LIHTC proposals but has provided resolutions of local

support.

46. Since the effective date of the 2013 law requiring high points for municipal approval,

there have been nine LIHTC 9% attempted applications for LIHTC projects in Wylie. Six of

those applications were for general or family projects while three would have been restricted to

elderly occupancy. The Wylie City Council vetoed all of the non-elderly, family LIHTC project

proposals by refusing to pass resolutions of municipal support. Without the resolutions, these

proposals could not receive enough selection criteria points to receive a tax credit allocation. The

Wylie City Council passed a resolution of support in 2018 for one of the three elderly restricted

LIHTC projects.

47. The U.S. Treasury and HUD have found local vetoes such as that used by Wylie's

refusal to approve or not oppose applications for LIHTC housing can have a discriminatory effect

and perpetuate racial segregation. Revenue Ruling 2016-29.

48. In 2001, TDHCA approved a 120 unit LIHTC development to be located in Wylie,

Texas. This complex, Bachon Townhomes, is the only apartment complex in Wylie that accepts

vouchers. This LIHTC development predates the 2013 state law requiring municipal approval.

49. The Wylie City Council has consistently expressed its preference for elderly restricted

LIHTC housing over LIHTC housing for families.

50. In 2005, Marc Footlik, a developer for Birmingham Village Partners, cited the City

preference for elderly restricted LIHTC housing in withdrawing his application for family

housing.

51. The minutes of the 1/24/2012 Wylie City Council meeting state Council members concerns that approving elderly restricted housing could result in that housing be available to non-elderly households in the future and opposing that result.

52. The minutes of the 12/11/2012 Wylie City Council meeting state:

> Mayor Hogue asked Stuart Shaw, representative for Bonner Carrington Development if residents younger than 55 could live in the facility. Mr. Shaw replied that spouses of renters age 55 could live in the facility from age 50 but no children or adults under age 50 would be permitted. He noted that the average age of residents was 72 years of age. Mayor Hogue stated that he had some concerns regarding the possibility of management renting to residents under the age of 55, if occupancy was down. Mr. Shaw replied he was bound by the state to conform to regulations of 55 or older residents. He reminded council during the last discussion regarding support, he had committed to placing the 100% requirement as a deed restriction to go with the property not the owner.

53. The minutes of the 1/08/13 meeting state Council members concerns that approving elderly restricted housing could result in that housing be available to non-elderly households in the future and opposing that result.

54. Brad Emerson, a 2015 candidate for Wylie City Council and current member of the Wylie Planning Commission, ran for office supporting the existing City Council opposition to the LIHTC non-elderly applications.

55. The Wylie City Council denied resolutions of support for non-elderly restricted LIHTC applications simply by refusing to place an item to consider such resolutions on the City Council agenda.

**Lack of affordable housing in Wylie**

56. The City of Wylie provides no low income affordable rental housing. The City has

-14-

never activated its own public housing authority. The City has refused requests to allow the Dallas Housing Authority to develop public housing units in Wylie. The City has not applied for federal or state funds to provide low income affordable rental housing. ICP has asked the City to support the use of LIHTCs for non-elderly restricted projects or to take other actions to provide low income affordable housing. The City has done neither.

57. As of 2018, there are only 64 voucher households residing in Wylie. The most current U.S. Census data shows 14,007 total households in Wylie.

58. The need for low income affordable housing in Wylie is disproportionately non-elderly. HUD's housing need data for Wylie shows 80% of the low income renter households paying more than 30% of their income for housing are non-elderly households and 20% are elderly households.[3]

**The exclusion of low income affordable rental housing disadvantages a disproportionately Black population group**.

59.  The only LIHTC project in Wylie is disproportionately minority. The LIHTC project is Bachon Townhomes and it is 25% White non-Hispanic. By contrast, the privately funded multifamily units in the City of Wylie are 59% White non-Hispanic.

60. LIHTC units in the seven county Dallas Plano-Irving Metropolitan Division are similarly disproportionately minority. These units are 51% Black, 24% Hispanic, and 24% White non-Hispanic occupied.

61. The federal voucher program provides a subsidy to landlords willing to rent units to very low income and extremely low income households with a voucher. The subsidy pays the

---

[3] The non-elderly households include all family and other households.

difference between the contract rent and the amount the voucher households are required to pay.

Voucher households pay between 30% and 40% of their income as their share of the rent. 42

U.S.C. § 1437f(o). There are 29,196 voucher households in the Dallas-Plano-Irving Metropolitan

Division according to the most recent HUD Picture of Subsidized Housing report. The voucher

households in the Dallas-Plano-Irving Metropolitan Division are 90% minority. 81% of the

voucher households are Black or African American. 6% are Hispanic. 10% are White non-

Hispanic. Non-elderly households are 78% of all voucher households in the Dallas-Plano-Irving

Metropolitan Division. The only type of multifamily housing that by law is explicitly prohibited

from discriminating against voucher families because of their participation in the voucher

program is LIHTC housing. The City's exclusion of non-elderly restricted LIHTC housing also

excludes voucher households from the City.

62. 85% of the Dallas Housing Authority voucher holders are Black.

63. 78% of the Dallas Housing Authority voucher holders are non-elderly.

64. The vouchers may be used throughout the Dallas metropolitan area and are not

limited to housing units located within the city limits of the local agency issuing the voucher.

**The exclusion of low income affordable rental housing disadvantages a population group that is disproportionately families with children under 18 years of age.**

65. The households in need of low income affordable housing in Wylie are

disproportionately families with children. HUD's housing need data for Wylie shows that 55% of

the low income renter households paying more than 30% of their income for housing are family

households and 20% are elderly households.

66. 85% of the households on the DHA public housing waiting list are families with

children.

67. 74% of the households on the DHA voucher waiting list are families with children.

**The exclusion of low income affordable rental housing perpetuates racial segregation by making units in Wylie unavailable to low income families seeking housing in majority White non-Hispanic areas in Wylie.**

68. 67% of the housing units in Wylie are occupied by White non-Hispanic households, 12.5% by Black households, 14.8% by Hispanic households, and 3.7% by Asian households.

69. 85% of all LIHTC units in the seven county Dallas Plano-Irving Metropolitan Division are in predominantly minority areas.

70. The other low income affordable rental housing units in the seven county Dallas Plano-Irving Metropolitan Division are disproportionately located in predominantly minority areas.

71. Each additional unit of low income affordable rental housing added in Wylie ends the perpetuation of racial segregation for the assisted household renting the unit in Wylie.

**Wylie's deliberate obstruction of the development of LIHTC housing in Wylie for LIHTC families is intentional discrimination because of race or color**

72. The facts show a prima facie case of disparate treatment based on race.

73. The denial of support for non-elderly restricted LIHTC applications denies support for projects that would be disproportionately Black occupied compared to the non-LIHTC multifamily projects in Wylie.

74. The LIHTC non-elderly units in the Dallas-Plan-Irving Metropolitan Division are disproportionately Black occupied. 55% of all LIHTC non-elderly units in the Dallas-Plan-Irving Metropolitan Division are Black occupied. 55% of the LIHTC non-elderly units in the City of

Wylie Bachon Town Homes are Black occupied. By comparison, 27% of all multifamily units in the Dallas-Plan-Irving Metropolitan Division are Black occupied. 10% of all multifamily units in the City of Wylie are Black occupied.

75. ICP has Black voucher families eligible for LIHTC units and who want units in Wylie or in similar locations where housing is available. This is shown by the ICP Black voucher families living in Bachon Town Homes and in single family units in the City of Wylie.

76. The City of Wylie denies support for proposals to obtain LIHTC s for  non-elderly units. TDHCA sets the selection criteria points for municipal support as the second highest of all selection criteria points. The points for municipal support are usually between 14 and 17 points. An application that does not obtain these points will not obtain enough points to obtain an LIHTC allocation. The loss of these points makes LIHTC housing unavailable by denying the selection criteria points necessary to obtain LIHTC allocations from the Texas Department of Housing and Community Affairs. The City of Wylie's refusal to support a LIHTC proposal is an effective veto of the LIHTC allocation and makes housing unavailable because of race.

77. The City of Wylie continues to support proposals for elderly restricted LIHTC allocations. LIHTC elderly restricted housing projects in predominantly White non-Hispanic areas are 85% White non-Hispanic occupied compared to 5% Black occupied elderly restricted LIHTC projects in predominantly White non-Hispanic areas of the Dallas-Irving-Plano Metropolitan Division.

78. The circumstantial evidence of intentional discrimination includes the following facts set out below.

79. The discriminatory effects set out in paragraphs 58-63 and 67-70 show circumstantial

evidence of disparate treatment.

80. The City of Wylie has approved, through zoning, permits, and other actions, non-low income affordable multifamily apartments. These units are occupied by predominantly White non-Hispanic tenant households.

81. The City of Wylie has taken no action to provide any form of low income affordable rental housing including public housing by a public housing authority or the administration of voucher housing by the City. There have been and are City of Wylie residents in need of these publicly assisted housing units.

82. The City of Wylie has refused to support any proposal for non-elderly restricted LIHTC units.

83. The City of Wylie City Council does not state any specific reasons for its refusals to support the proposals for non-elderly restricted LIHTC units.

**The sequence of events leading up to the challenged decisions is evidence of intentional discrimination**

84. Since 2005, there have been seventeen LIHTC 9% proposed applications for LIHTC projects to be developed in Wylie. Nine were for non-elderly restricted, family LIHTC projects and eight were for elderly restricted LIHTC projects.

85. Six of the eight requests for City support of elderly restricted LIHTC proposals between 2009 through 2018 received resolutions of municipal support from the City of Wylie City Council.

86. In 2009, City Council resolution 2009-06(R) supported Evergreen at Wylie Senior Living, an elderly restricted proposal. This resolution also authorized the applicant to act on

behalf of the City in applying for federal HOME funds from the State. The application scored enough points to be competitive but did not receive an allocation pursuant to the TDHCA's discretionary allocation decisions.

87. In 2010, City Council resolution 2010-02(R) supported Evergreen at Wylie Senior Living, an elderly restricted proposal. This resolution also authorized the applicant to act on behalf of the City in applying for federal HOME funds from the State. One month later another City Council resolution 2010-09(R) also supported Evergreen at Wylie Senior Living. This resolution also authorized the applicant to act on behalf of the City in applying for federal HOME funds from the State. The second resolution was adopted to correct a reference to applicable state law. The applications scored enough points to have been allocated tax credits pursuant to the TDHCA Board's discretionary forward commitment process but was not given the discretionary award.

88. In 2010, City Council resolution 2010-11(R) supported Sphinx at West Gate Senior Villas, an elderly restricted LIHTC proposal. This resolution also authorized the applicant to act on behalf of the City in applying for federal HOME funds from the State. TDHCA did not allocate tax credits to the proposal.

89. In 2012, City Council resolution 2012-05(R) supported Mariposa at Woodbridge and authorized the applicant to act on behalf of the City in applying for federal HOME funds from the State. This was an elderly restricted LIHTC proposal. City Council resolution 2012-8(R) enacted a community revitalization zone for the applicant to use in its LIHTC application.

90. In 2012, the Mariposa at Woodbridge 2013 application was initially denied municipal approval. Then City Council resolution 2013-03(R) supported Mariposa at Woodbridge and

approved the applicant for federal HOME funds from the State. The resolution also designated

the application as contributing most to the concerted revitalization of the City. This was an

elderly restricted LIHTC proposal. The applicant did not submit the documents to obtain points

for Community Input or State legislative support. With points for these selection criteria, the

application would have scored within the point range of the applications that did receive an

allocation.

91. In 2018, City Resolution 2018-07(R) supported Heritage at Wylie and approved a

municipal waiver of permit fees as a local contribution in support of the application. This was an

elderly restricted LIHTC proposal. The application scored high enough to receive an allocation of

tax credits but was denied an allocation because of the TDHCA's "Elderly Allocation Limit

Violation." This is the State cap on the total amount of tax credits that can be awarded to elderly

restricted project applications.

92. One of the two elderly restricted LIHTC proposals that did not receive City support

was the 2015 proposal Villas at Brown Center. The request was withdrawn.

93. The other elderly restricted LIHTC proposal that requested but was refused support

was the 2016 application for Villas at Alanis Crossing. The proposal was considered by the City

Council at the 1/26/2016 City Council work session. The Mayor advised members of the Council

to contact the City Manager directly if they wished to place a resolution on an upcoming agenda.

The request for support was not placed on any subsequent City Council agendas.

94. There were nine requests for City of Wylie support of non-elderly restricted, family

LIHTC proposals. The City took no action to officially consider any of the nine requests. While

the developers requested City Council resolutions approving their projects, no City Council

member including the Mayor made the necessary formal request for the support resolution to be placed on the City Council agenda for a vote. Even if one City Council member other than the Mayor had been willing to make the request, there would still be the need of a second City Council member to second the request. There is no record of a second by another City Council member on any request to place the possible approval of a non-elderly restricted LIHTC application on the Wylie City Council agenda for a vote.

95. In 2005, Marc Footlik, a developer for Birmingham Village Partners, cited the City preference for elderly restricted LIHTC housing as his reason for withdrawing his application for non-elderly restricted housing LIHTC funding from TDHCA

96. In 2013, the City was notified of  two requests for its position on non-elderly restricted proposals, Residences at West Gate and Centennial Apartments. There was no response by the City. The developers did not submit final applications for LIHTC funding.

97. In 2014, the City was notified of the request for its position on the non-elderly restricted proposal for Sphinx at Country Club Villas. There was no response by the City. The developers did not submit final applications for LIHTC funding.

98. In 2015, four proposals for support of non-elderly restricted LIHTC applications were submitted for City support at the City Council 2/10/2015 meeting. The proposals were Residences at Wylie, Sphinx at Citygate Villas, Villas at Alanis Crossing, and Provision at Westgate Commons. Wylie residents objected to these applications on grounds that applied not to the projects but to the tenants who would reside in the projects. The Wylie Independent School District Superintendent stated that the City of Wylie has plenty of affordable housing and does not need additional housing of this nature. He objected to the presence of the low income tenants

in such housing as causing the construction of new school campuses. The requests for support were not placed on that or on any subsequent City Council agenda.

99. The Residences at Wylie submitted a complete application for an allocation of tax credits for its non-elderly restricted proposal. The application received base points of 129. This was within the range of base points awarded to the applications that did receive an allocation of tax credits. Had The Residences at Wylie obtained the 17 points for municipal approval and the accompanying 8 points for legislator approval, it would have scored more total points than two of the applications that did receive an allocation of tax credits. The proposal would have been competitive for an LIHTC award.

100. In 2017, the proposal for the Villas at Alanis, a non-elderly restricted LIHTC application, was submitted for City support at the 2/14/2017 City Council work session.  The request for support was not placed on that or on any subsequent City Council agenda. All of the 2017 9% LIHTC applications receiving tax credit allocations received full points for municipal approval. No application without municipal approval received an allocation. Villas at Alanis had a base score that was within the range of the base scores of the applications that, with municipal approval and other subsidiary points, scored enough points to receive a tax credit allocation. Villas at Alanis would have been reasonably likely to have received an allocation of tax credits had it received City of Wylie support.

**The City's departures from substantive standards that would have strongly favored a decision contrary to the ones reached show evidence of discriminatory intent.**

101. The U.S. Internal Revenue Service recognizes that the use of municipal approval or local vetoes of LIHTC applications to perpetuate racial segregation violates at least the policy of

the Fair Housing Act and depending on the facts may also violate specific nondiscrimination provisions of the Act. Rev. Rul 2016-29. The City's use of the municipal veto for non-elderly restricted LIHTC applications is a substantive departure from this factor governing the LIHTC program.

102. The U.S. Department of Justice and the U.S. Department of Housing and Urban Development state that prohibiting low-income housing may have a discriminatory effect on persons because of their membership in a protected class. Joint Statement of the Department of Housing and Urban Development and the Department of Justice State and Local Land Use Laws and Practices and the Application of the Fair Housing Act, 2016, page 5. Avoiding discriminatory effects is a factor usually considered important by municipal governments making housing decisions.

103. The American Planning Association considers the need to break down the stratification of housing markets by race, ethnicity, and income an import factor in deciding whether to provide a wide range of housing by eliminating planning decisions that have a disparate racial impact. The Association states:

> General Policy Position #1
> Planners need to support the national goal of providing housing opportunity to households of all ages, races and income levels throughout the housing markets of the nation. Planners should identify and strive to change or eliminate planning policies, regulations, and programs that have a disparate impact on groups identified by race, ethnicity, economic status, or disability.
> Specific Policy Position #1A: Housing Stratification. Planners should use Comprehensive Plans, Housing Elements, and development regulations to reduce housing stratification and spur the development and preservation of affordable housing.
> Reason to Support
> Housing markets are now stratified by race, ethnicity and income. These stratified markets prevent some households, especially the poor, from gaining access to

jobs, schools, shopping and other services, reducing the quality of life for those excluded households and exacerbating the problems associated with concentrated poverty and minorities. Planners need to break down this stratification. They should strive to provide a wide range of housing opportunities in as many locations as possible. This will help to reduce the societal ills resulting from the rigid stratification now found in today's housing markets.
APA Policy Guide on Housing
Adopted by the Legislative and Policy Committee, March 21, 2006
Adopted by the Chapter Delegate Assembly, April 22, 2006
Adopted by the Board of Directors, April 23, 2006.

104. The American Planning Association is a national association of urban planners. Through The American Institute of Certified Planners it provides professional institute and provides the only nationwide, independent verification of planners' qualifications.

https://www.planning.org/membership/faq/

105. The City of Wylie's actions were substantial departures from these substantive standards for municipal decision making that would have strongly favored a different result.

**Wylie's deliberate obstruction of the development of LIHTC housing in Wylie for voucher families is intentional discrimination because of familial status**

106. The City of Wylie's refusal to approve proposals for non-elderly restricted LIHTC projects has the discriminatory effect disadvantaging families with children.

107. The facts show a prima facie case of discriminatory treatment by the City of Wylie's refusal to approve proposals for non-elderly restricted LIHTC projects.

108. The households in need of low income affordable housing assistance in the City of Wylie are disproportionately families with children. 55% of all renter households with less than 80% of Area Median Family Income that are paying more than 30% of their income for housing are families with children. Only 20% of all renter households with less than 80% of Area Median Family Income that are paying more than 30% of their income for housing are elderly

households.

109. There are voucher households who meet the definition of familial status under the Fair Housing Act. ICP's clients include voucher families that are tenants that meet the definition of familial status under the Fair Housing Act.

110. 48% of DHA voucher tenants are families with one or more children. Only 22% of DHA voucher tenants are elderly - 62 years of age or older and no children under 18. 74% of DHA's voucher waiting list are families with children.

111. Low income families with children under 18 would have been eligible for LIHTC housing  in Wylie. ICP's clients include families with children under 18 that would have been eligible for LIHTC housing in Wylie.

112. The City of Wylie made LIHTC housing unavailable for voucher families by obstructing the development of LIHTC housing by refusing to support proposals for LIHTC applications for family housing in Wylie.

113. The City of Wylie continued to support proposals for LIHTC housing for elderly restricted households. In 2018, Wylie City Council passed a resolution of support and provided financial support to make LIHTC housing available for an elderly only population. Voucher families with children are not eligible for elderly restricted housing.

114. The facts set out in paragraphs 64-66 are adopted by reference.

115. The Wylie City Council stated no reasons for its refusals to approve the requests for support of proposals for LIHTC housing available to families with children.

**Claims for relief**

116. Defendant's actions make dwelling units unavailable to low income families because

of race, color, or familial status violates 42 U.S.C. § 3604(a).

117. Defendant's actions make dwelling units unavailable to voucher households because of race or color is in violation of the Fourteenth Amendment to the U.S. Constitution.

118. Defendant's actions making LIHTC dwellings unavailable because of race or color is a deprivation of a right under the Fourteenth Amendment to the U.S. Constitution and is a direct City of Wylie action taken pursuant to official municipal policy which has caused injury to ICP in violation of 42 U.S.C. § 1983.

119. Defendant's actions making LIHTC dwellings unavailable because of race or color is a deprivation of a right under 42 U.S.C. § 1982 and is a direct City of Wylie action taken pursuant to official municipal policy which has caused injury to ICP in violation of 42 U.S.C. § 1983.

**Prayer for relief**

120. Plaintiff requests the following relief:

a) an injunction prohibiting the City of Wylie from refusing to support proposals for non-elderly restricted LIHTC projects absent the consideration of objective criteria that serve the City of Wylie's legitimate, substantial, and non-discriminatory interests;

b) adopt and implement a plan to provide low income affordable rental housing opportunities for the approximately 375 low income renter families currently paying more than 30% of their income for housing;

c) adopt and implement a plan to encourage private landlords to rent units to voucher families until there are units available for the City of Wylie's proportional share of the housing vouchers available in the Dallas-Plano-Irving Metropolitan Division;

d) any other appropriate relief; and

e) litigation costs, attorney fees, and court costs.

Respectfully Submitted,

/s/Laura B. Beshara
Laura B. Beshara
State Bar No. 02261750
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: laurabeshara@swbell.net
Attorney for Plaintiff

Michael M. Daniel
State Bar No. 05360500
DANIEL & BESHARA, P.C.
3301 Elm Street
Dallas, Texas 75226-1637
214-939-9230
Fax 214-741-3596
E-mail: daniel.michael@att.net
Attorney for Plaintiff